## Commonwealth v. Bieber

*Harold G. Knight, Jr.*, assistant district attorney, for Commonwealth.

*Edward M. Hawes* and *Julian W. Barnard*, for defendant.

CORSON, J., May 31, 1941.—On December 17, 1940, Edna May Bieber was charged with violation of art. X, sec. 1016 (*a*), of The Vehicle Code of May 1, 1929, P. L. 905, as amended. Defendant failed to appear within ten days from the date registered notice was sent to her, whereupon a warrant was issued and served on February 1, 1941. On February 4, 1941, defendant waived hearing and posted bond for hearing before this court.

On March 14, 1941, after hearing in this court, defendant was found guilty and to that action the present exception was filed.

Two reasons are assigned in support of the exception. The first is that the stop sign erected at Markley and Marshall Streets, in Norristown, was not erected in accordance with the provisions of The Vehicle Code. The second reason is that the prosecution was barred by the limitation set forth in section 1201(a) of The Vehicle Code, supra, as amended by the Act of June 27, 1939, P. L. 1135.

Defendant was charged with failing to come to a full stop within a reasonable distance before entering an intersection on a through highway where official "thru traffic stop" signs had been erected as provided by the code. Upon the evidence there would seem to be no doubt that defendant did fail to stop at this intersection. Section 1112(c) of the code provides, inter alia:

"All signs shall be of the size, form, design, and coloring as the Secretary of Highways . . . shall direct, and shall be illuminated at night, or so placed as to be illuminated by the head lamps of an approaching vehicle, or by street lights, or the word 'STOP' may be illuminated at night or may be luminous."

We are compelled to find on the evidence that this sign as erected did not comply with the code so far as illumination at night was concerned. If defendant had failed to stop, etc., at this intersection at night, she would have to be found not guilty: Commonwealth v. Spang, 33 D. & C. 641 (1938). We feel, however, that the present case must be differentiated from the Spang case where the alleged violation took place at night. Exceptant here contends that, since the sign did not comply with the illumination provisions at night, it therefore became an illegal sign during the daytime. With this contention we cannot agree. If exceptant's contention is sound, then if a sign were erected at daylight in the morning, it could not possibly have been

illuminated before that night and under defendant's contention no one would have to pay attention to that sign until it had been illuminated 12 hours after its erection. We cannot conceive that the legislature meant that any such absurd situation should arise and we feel that a sign may be a perfectly proper sign for daylight and yet not be legal at night. We agree with the ruling of Judge Schaeffer, in the Spang case, that a sign may be so high as not to be illuminated by the lights of passing automobiles within the meaning of the code. However, for day driving in some cases a sign erected at the height of seven or seven and one-half feet may be more easily visible than one erected under the 42 inch level. The writer of this opinion remembers one case where several appeals were taken to this court in stop street cases where appellants alleged that the sign was so low that the view of it was blocked by parked cars and that it could not be seen by motorists approaching the intersection. This sign was later raised to a height of seven feet for the purpose of allowing it to be better seen by approaching drivers. Since the contention of defendant is that this sign was not properly illuminated so as to make it control the actions of drivers at night, we feel that the first reason in support of the exception is without merit.

The second reason is based upon section 1201(a) of the code, supra, which provides, inter alia, that "Informations . . . shall be brought . . . within fifteen (15) days after the commission of the alleged offense and not thereafter, except that where an information is filed against a person prima facie guilty of an offense, and it subsequently appears that a person other than the person named in the information was the offender, an information may be filed against such other person within fifteen (15) days after his or her identity shall have been discovered."

The present information was filed against defendant's husband as the registered owner of the car and the registered owner of the license plates thereon. Ad-

mittedly, this raised a prima facie case against Mr. Bieber and the information sworn out against him was within the time prescribed by the code. Admittedly, Mrs. Bieber, the present defendant, came to City Hall and told some officer, not the prosecutor, however, in her husband's case, that she and not her husband had been operating the car at the time of the alleged violation. If, upon this state of fact, we must hold that the identity of the real operator of the car was thereby "discovered" within the meaning and construction of the code, then defendant's contention would have to be sustained. We feel, however, that section 1201 (a) must be construed in connection with section 1209 of the code, which provides, inter alia, that "In any proceeding for a violation of the provisions of this act, the registration plate displayed on such motor vehicle shall be prima facie evidence that the owner of such motor vehicle was then operating the same." Under the same section it is further provided that if at any hearing or proceeding the owner shall testify, under oath or affirmation, that he was not operating the said vehicle at the time of the alleged violation and shall submit himself to an examination as to who, at that time, was operating such motor vehicle, and reveal the name of such person, if known to him, then the prima facie evidence arising from the registration plate shall be overcome and removed and the burden of proof shifted. Upon this state of the law we feel that it was the intention of the legislature that the "discovery" of the actual driver of the car was intended to mean discovery provided under section 1209. We feel that the police had a right to rest upon the prima facie case until such time as the situation was changed by the sworn testimony of the owner as to the actual driver of the car. In the present case, defendant's husband did so testify at his hearing and within 15 days thereafter the present prosecution was brought. We feel that such prosecution was within the limitation of the code. This

is particularly true in this case because of the fact that there is no evidence that the prosecutor who signed the information "discovered" the identity of the real operator of the car prior to the hearing of the registered owner. The discovery by a fellow-officer of the identity of the driver cannot be held to be the discovery of such identity by the prosecutor. The code must mean that the "discovery" of the real identity of the driver must be by the party bringing the prosecution in the prima facie case, otherwise "discovery" or knowledge of the driver's real identity by anyone would cause the 15-day limitation to begin running. For the reasons given we therefore enter the following decree:

And now, May 31, 1941, defendant's exception to the action of the trial judge in finding defendant guilty is dismissed and defendant is directed to appear for sentence, in courtroom A. on Friday, June 6, 1941, at 9 a.m. (e. s. t.). An exception is allowed to defendant.